UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 24-cr-230 (ABJ) |
| | : | |
| **ZIMARIE BRYANT,** | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Zimarie Bryant. On March 13, 2025, the Defendant pled guilty to one count of Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and one count of Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o). For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 41 months of incarceration to be followed by 36 months of supervised release.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On August 31, 2023, FBI agents went to an apartment in the 3600 Block of Jay Street, NE, Washington, D.C., to execute a federal arrest warrant. The apartment is in the Paradise neighborhood of D.C., where the Defendant is known to frequent and have ties. Agents knocked on the door but did not gain entry for more than 20 minutes. Other individuals were present at the time the warrant was executed, including the Defendant.

Agents obtained a search warrant to search the apartment and recovered numerous firearms and other items. One of the firearms they recovered was a 9mm Glock 45 with a switch, making it a machinegun:



Agents also recovered about 12 pounds of marijuana, ammunition, and a firearm magazine. As part of this plea, the Defendant acknowledged that he possessed the marijuana with the intent to distribute it, that he possessed the machinegun in connection with that possession with intent to distribute, and that he knew the firearm was a machinegun.

While the Defendant was released from the apartment, messages from the Defendant's Instagram account from around the time of the search acknowledge his presence at the scene. In the afternoon of August 31, 2023, the date of the search warrant execution, the Defendant—who goes by "CruddyMarie" on Instagram—sent an Instagram message to another user saying, "I was just locked up and got picked up by the fbi". In a separate conversation that same day, another Instagram user asked him, "Ever found some thunder 1" "? *", which refers to marijuana. The Defendant responded, "I had some but fbi ran in our spot and took everything".

On May 30, 2024, the Defendant was arrested at a residence in Southeast Washington, D.C. Agents began trying to enter the apartment building at approximately 6:05 a.m. Among the items recovered was a disassembled Glock 19 9mm handgun, two 9mm magazines with 15 rounds each, a black scale, and two additional 9mm rounds. When the Defendant was shown his arrest warrant during booking, he denied having a machinegun but did admit he had a Glock 19.

## II.     LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) To afford adequate deterrence to criminal conduct;
   c) To protect the public from further crimes of the defendant; and
   d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
   a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i) Issued by the Sentencing Commission . . . ; and
      ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
   a) Issued by the Sentencing Commission . . . and
   b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

### III.   GUIDELINES CALCULATION

#### A.   Total Offense Level

For purposes of calculating the Guidelines, the offenses group, and the Guideline calculation for the machinegun offense controls. *See* PSR ¶ 36. The Base Offense Level is 18. *See* PSR ¶ 36. Four points are added because the Defendant possessed the machinegun in connection with his drug trafficking, and three points are removed for Acceptance of Responsibility. *See* PSR ¶¶ 37, 43-44. The Total Offense Level is thus 19. *See* PSR ¶ 46.

#### B.   Criminal History Category

The PSR writer calculates the Defendant to have a total of three criminal history points, which places him in Criminal History Category II. *See* PSR ¶¶ 47-51.

#### C.   Sentencing Guideline Range

A final offense level of 19 and Criminal History Category II results in a Guideline range of 33 to 41 months of incarceration with 24 to 36 months of supervised release. *See* PSR ¶¶ 95-102.

### IV.   ARGUMENT

As stated above, the United States respectfully requests that the Court sentence the

Defendant to a term of 41 months of incarceration, followed by 36 months of supervised release. For the reasons detailed below, the United States respectfully submits that this sentence is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

    1.    **The Nature, Circumstances, and Seriousness of the Offense**

The circumstances of this case are exceedingly serious. The circumstances are not limited to drug trafficking, though drug trafficking itself is serious. Nor are the circumstances limited to gun possession, though gun possession itself is serious. Indeed, all instances of gun violence begin with gun possession, and as this Court is well aware, our community has recently faced staggering levels of gun violence. D.C. saw 274 homicides in 2023, the highest in more than two decades. *See* MPD, *District Crime Data at a Glance*.[1] About 84 percent of the 203 homicides in 2022 involved the use of a firearm. *See* MPD, *Annual Report 2022*, 17.[2] This case involves the combination of drugs and a machinegun. That combination poses a unique danger to our community, as drug traffickers all too often resort to violence for various reasons. *Compare Smith v. United States*, 508 U.S. 223, 240 (1993) (noting that "drugs and guns are a dangerous combination").

Moreover, machineguns are generally less accurate and, therefore, pose a heightened and serious risk to bystanders.[3] And the Defendant seemed to relish that danger. For example, on March 21, 2021, the Defendant wrote, "Keep dissing them yps we coming with switches." On September 15, 2021, the Defendant wrote, "nah my switch jammed bro I'm really active out here n***as don't get scared." In a music video posted on July 6, 2023, he rapped, "we spinnin' with

---

[1] https://mpdc.dc.gov/page/district-crime-data-glance (last visited May 18, 2024).
[2] https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR_2022_lowres.pdf.
[3] https://www.nbcwashington.com/investigations/incredibly-serious-deadly-unpredictable-switches-add-to-dcs-gun-toll-prosecutors-seek-change/3482548/.

5

fully APs with a drum" and "Get hit with the switch you won't see the next day."

The seriousness of this conduct justifies a sentence at the high end of the Guideline range.

2.   **The Defendant's History and Characteristics**

The Defendant is, to be sure, young and has no adult criminal convictions. However, that is not the end of the matter. The Defendant has a history of using and possessing firearms unlawfully. For example, on June 30, 2023, the Defendant posted a video on Instagram showing him possessing what appears to be the same firearm as what is involved in this case (albeit without a switch):



The following screenshots are from a video from February 13, 2024:



On February 22, 2024, the Defendant's Instagram account posted a picture of what appears to be him with a firearm:



In addition to possession, the Defendant is suspected in the unlawful discharge of a firearm during a robbery. Specifically, on December 24, 2022, the Defendant and at least two other individuals went to a convenience store in Northeast Washington, D.C. One individual (not the Defendant) entered the store with a trash bag and began to place items in the bag. When the individual tried to leave without paying for the items, an employee locked the door to prevent the individual from leaving. That individual threatened the employee. When the individual could not exit, the Defendant (in the green hoodie in the photo below) tried to break the glass from the outside:



When that did not work, the individual inside the store pulled out a gun and began shooting at the door in an apparent attempt escape:



The Defendant eventually pulled out a gun and shot at the door from the outside (the screenshot below left is included as it is a better exterior image of the Defendant; the one below right shows a muzzle flash from his firearm):



The Defendant was identified by a law enforcement officer from the below BOLO photo:



9

The Defendant's history of firearms possession and use weighs in favor of the Government's requested sentence. So too does his behavior on pretrial supervision in this case; the Court is aware that the Defendant did not properly charge his GPS and may also have accessed the Internet in violation of the Court's order, *see* ECF No. 24.

### 3. The Need to Promote Respect for the Law and Deterrence

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The United States respectfully submits that the need to deter not only the Defendant, but also others, weighs in favor of the recommended sentence.

As applied to the Defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case. With respect to general deterrence, this recommended sentence promotes respect for the law and the safety of the community by serving as a deterrent to brazen conduct such as that perpetrated by the Defendant and seeks to ensure that others are not similarly emboldened.

### 4. Other factors

The United States' recommended sentence is also justified to protect the public from the Defendant and hopefully give him the skills and incentive to avoid reoffending in the future.

## V.  CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to 41 months of imprisonment, followed by 36 months of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

                                                    Respectfully submitted,

                                                    JEANINE FERRIS PIRRO
                                                    UNITED STATES ATTORNEY

By:    */s/ Solomon Eppel*
        SOLOMON EPPEL
        DC Bar No. 1046323
        Assistant United States Attorney
        601 D Street, NW
        Washington, D.C. 20530